**CHARTER TOWNSHIP OF VAN BUREN, Plaintiff,**

v.

**Valdas ADAMKUS, Defendant,**

and

**Wayne Disposal, Inc., Intervenor.**

No. 97–71657.

United States District Court, E.D. Michigan, Southern Division.

March 20, 1998.

See also 965 F. 959.

Saulius Mikalonis, Southfield, MI, for Plaintiff.

Michael Rowe, Washington, DC, Mark Werder, Detroit, MI, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

The parties return to this Court, filing cross motions for summary judgment. Plaintiff, Van Buren Township ("Van Buren"), argues that Defendant, United States Environmental Protection Agency ("EPA"), acted arbitrarily and capriciously in violation of the Administrative Procedures Act ("APA") by approving the disposal of polychlorinated biphenyl ("PCB") wastes at Wayne Disposal, Inc.'s ("WDI") landfill, which lies within Van Buren's borders. The EPA and WDI, an intervenor, disagree. Because Van Buren has failed to demonstrate any modicum of arbitrariness in the EPA's actions, no genuine issue exists as to the lawfulness of the EPA's decision. Accordingly, Van Buren's motion for summary judgment is denied; EPA's and WDI's motions for summary judgment are granted.

## I. Facts

This Court issued an order denying Plaintiff's motion for stay in May of 1997. *See Charter Township of Van Buren v. Adamkus,* 965 F.Supp. 959 (E.D.Mich.1997). The underlying facts have not changed. Accordingly, this Court refers the parties to the May 1997 decision for a recitation of facts. *See Charter Township of Van Buren,* 965 F.Supp. at 961–63.

## II. Standard of Review

The standards delineated in the APA, 5 U.S.C. § 706, control this action. Mindful of these statutory parameters, the Court must "determine whether the EPA followed the proper lawful procedures and acted within its statutory authority." *National Steel Corp., Great Lakes Steel v. Gorsuch,* 700 F.2d 314, 320 (6th Cir.1983). In so doing, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court may not substitute its judgment for the agency's judgment. "Generally, a court will find an abuse of discretion only if there is no evidence to support the [Secretary's] decision, or if [it] is based on an improper understanding of the law." *Oakland County Board of Commissioners v. U.S. Department of Labor,* 853 F.2d 439, 442 (6th Cir.1988) (quoting *Pappas v. Federal*

*Communications Comm.*, 807 F.2d 1019, 1023 (D.C.Cir.1986) (quotation omitted)). Where, as here, the Court confronts a technical record, the Court's review is deferential to the agency, fulfilling only the "narrowly defined duty of holding agencies to certain minimal standards of rationality." State of *Michigan v. Thomas*, 805 F.2d 176, 182 (6th Cir.1986). *See also Charter Township of Van Buren*, 965 F.Supp. at 963–64.

### III.   Analysis

Van Buren identifies four "deficiencies in EPA's decision-making," which allegedly render the EPA's approval of the waste permit arbitrary and capricious. First, Van Buren contends that EPA failed to consider health impacts on the surrounding community. Second, Van Buren asserts that the EPA ignored data challenging the agency decision that the landfill site is not located in a groundwater recharge zone. Third, the EPA allegedly relied on "stale evidence." Finally, the EPA erred in concluding "that the facility's compliance record was adequate." *See* Plaintiff's Brief, 4. With the latter three "deficiencies," Van Buren merely reiterates arguments this Court previously rejected. As for Van Buren's assertion regarding the EPA's alleged inattention to health ramifications, the record does not support Van Buren's position. Thus, Van Buren's motion fails to identify an instance in which the EPA acted arbitrarily and capriciously. The Court, accordingly, denies Van Buren's motion for summary judgment and grants the opposing parties' motions.

**a.   Health Effects:** Van Buren contends that the EPA failed to account for "public health and social impact considerations" as required by the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, *et seq.* According to Van Buren, "EPA explicitly made no determination concerning potential health effects ... [instead it] deferr[ed] some type of response to a non-involved and non-affiliated entity (i.e., the Michigan Department of Health)." *See* Plaintiff's Brief, 7. In support, Van Buren cites the following paragraph:

> While it is certainly possible that certain health effects could result from chemical exposure, the occurrence of diseases and conditions does not establish a causal con-

nection between the reported health problems and the operation of the WDI facility. * * * In order to consider the local health issues further, we would suggest that the Michigan Department of Community Health should be consulted.

*Id.* at 8 (citing the Administrative Record [A.R.] at 3072). Van Buren concludes by lambasting the EPA's "blind adherence to technical matters." *Id.* at 9.

■ The Court does not find Van Buren's characterization of the record accurate—or persuasive. For reasons unclear to the Court, Van Buren misquotes the A.R. The correct version of the relevant paragraph is as follows:

> Residents also expressed concerns about the incidence of disease and illness and the possible health effects of chemical exposure on human health. While it is possible that certain health effects could result from chemical exposure, the occurrence of diseases and conditions does not establish a causal connection between the reported health problems and the operation of the WDI facility. For example, several of the reported diseases and illnesses have a genetic connection or are related to personal habits (e.g., cigarette smoking, obesity). Also, for several types of cancer and other illnesses, there will be a background level of incidence that would be expected in the general population regardless of location. In order to consider the local health issues further, we would suggest that the Michigan Department of Community health should be consulted.

A.R. at 3072. This portion of the A.R., properly quoted, *does not support* Van Buren's contention that the EPA failed to consider public health effect. To the contrary, this paragraph juxtaposed with the record as a whole confirms the Court's previous conclusion that the EPA addressed adequately concerns regarding health effects. *See* WDI's Brief in Opposition, Exhibit A (quoting relevant portions of the A.R.); *Charter Township of Van Buren*, 965 F.Supp. at 971 (finding "that the EPA has met its obligation to attend to the safety of local residents").

■ The Court finds without merit Van Buren's contention that the EPA's insistence

on compliance with technical regulations inadequately addresses the facility's impact on health and safety. The Court previously observed that the special procedures mandated to ensure that the wastes remain enclosed, "make it unlikely that the public will ever be exposed to the PCBs stored at the WDI facility." *Charter Township of Van Buren*, 965 F.Supp. at 970. Of course, "exposure is necessary for potential health risks to occur." A.R. at 3074. Whether exposure occurs pivots on whether wastes are properly handled, which, in turn, depends on whether the technical requirements of landfill management are satisfied. Thus, "[b]y addressing all the technical requirements and concerns, the [EPA] was necessarily addressing public health and environmental concerns." EPA's Brief in Opposition, 6; *see also* A.R. at 3070 ("The controls imposed upon a facility that handles PCB wastes are intended to protect the surrounding environment and health of the community, even if in a populated area.").

**b. Data Regarding A Groundwater Recharge Zone:** Van Buren asserts that the EPA "ignored relevant scientific data," which contradicted the EPA's conclusion that the site is not located within a groundwater recharge zone. Plaintiff's Brief, 9. The Court rejected this very argument seven months ago. *See Charter Township of Van Buren*, 965 F.Supp. at 966–67.

In its order denying Plaintiff's motion to stay, the Court reviewed contentions Van Buren now reiterates. Specifically, the Court addressed Van Buren's contention that an aquifer allegedly underlying the landfill recharges with groundwater discharge from the surface, *see* Plaintiff's Brief, 10, and that a 1986 report indicating the presence of tritium suggests that a fractured till could lead to contamination of water supplies, *see* Plaintiff's Brief, 12–14. The Court then concluded:

> [T]he Court is not persuaded that the EPA acted arbitrarily and capriciously by defining the upper aquifer in the manner that it did. The aquifer that Plaintiff contends should have been considered does not exist under any of the cells at WDI's facility, and therefore, has no direct relevance to

the determination of whether the landfill is in a groundwater recharge zone.

*Id.* at 967. The Court continued:

> Although the data [indicating the presence of tritium] ... was inconsistent with the EPA's ultimate conclusion, it is clear from the A.R. that the EPA was careful to consider and weigh all the existing data, finally concluding that far more evidence supported the finding that the site was not in a groundwater recharge zone.

*Id.* at 967. Plaintiff identifies no portion of the A.R. which would lead this Court to reconsider these previous rulings.

**c. Stale Data:** Van Buren insists that EPA's reliance on old data was "inappropriate and makes EPA's decision arbitrary and capricious." Plaintiff's Response, 14. In support, Van Buren relies on the "notes" of an EPA employee, who was reviewing 1980, 1981, and 1983 NTH, Ltd. reports.[1] *See* A.R. 9751–52 (attached in WDI's Appendix to its Brief in Opposition). Van Buren's reliance is misplaced.

The A.R. reveals that the EPA addressed the data's quality.

> Even with some incorrect information in the Neyer, Tisco and Hindo Ltd. Report, there was enough valid data to evaluate the technical suitability of the WDI site. The EPA uses its own technical expertise and judgment in evaluating chemical waste landfill applications. However, the EPA convened a peer review panel, comprised of both the EPA scientists and experts from the private sector, to look at the site's hydrology and the potential for groundwater migration across the underlying clay layer. This panel supported the EPA's findings.

A.R. at 3086; *see also Charter Township of Van Buren*, 965 F.Supp. at 969 ("The panel stated in its report that it reviewed WDI's application, five volumes of supplemental information regarding the application, internal EPA reports, and groundwater evaluation results."). Moreover, as the EPA notes, "Plaintiff's characterization of the data as 'old' does not logically lead to a conclusion that the data was invalid." EPA's Brief in

---

1. NTH is WDI's technical consultant.

Opposition, 11 n.7. This Court finds that Van Buren's reference to an "old" report fails to demonstrate that the EPA's conclusion, which was properly based on the record as a whole, was arbitrary or capricious.[2]

**d. Compliance History:** Van Buren asserts that "[t]he administrative record clearly demonstrated a long history of noncompliance with environmental standards on the part of EQ." Plaintiff's Brief, 16. "EQ" stands for the Environmental Quality Co., which is WDI's corporate parent. From this Van Buren concluded that the EPA's determination that the site poses an acceptable risk to its neighbors "goes against the great weight of evidence." *Id.* at 17. The Court addressed this precise argument in its Order Denying Plaintiff's Motion for Stay. The Court held:

> The EPA has considered WDI's compliance history and found it to be reasonable and acceptable under the circumstances. This Conclusion, coupled with the precaution of requiring an on-site compliance monitor, cannot be considered arbitrary and capricious.

*Charter Township of Van Buren,* 965 F.Supp. at 969. Plaintiff proffers no new reason or new cite to the A.R., which would lead this Court to reconsider its previous holding.

**e. Plaintiff's Response:** In its response to the opposing parties' motions, Van Buren raises two new issues.

■ First, Van Buren peppers its argument regarding inattention to health effects with the assertion that the "record is utterly devoid of any consideration of the economic impacts of [EPA's] decision." Plaintiff's Response, 4. Van Buren really does not develop this contention, but relies instead on the general prefatory language found in section 2601(c) of the TSCA, *see* 15 U.S.C. § 2601(c) (1998);[3] Plaintiff's Response, at 2. Van Buren's cite, however, does it little good. The Senate Commerce Committee Report on TSCA states that section 2601(c) "is not an operative section." *See* S.Rep. No. 698, 94th Cong.2d Sess. 14, *reprinted in* 1976 U.S.C.C.A.N. 4491, 4504 (attached to WDI's Reply Brief, 1). The Court finds Van Buren's assertion that the introductory statutory language requires a distinct economic analysis (so that the failure to include such an analysis renders the EPA's decision arbitrary) unpersuasive.

Moreover, section 2605(c) (an operative section entitled "Promulgation of subsection (a) rules") provides that in promulgating rules, the Administrator shall consider amongst other things "the reasonably ascertainable economic consequences of the rule, after consideration of the effect on the national economy, business, technological innovation, the environment, and public health." 15 U.S.C. § 2605(c) (1998). Thus, in adhering to the applicable rules, the EPA presumably addresses economic consequences. Van Buren proffers no evidence or argument to the contrary.

■ Van Buren also contends that "objective evidence exists which suggests that the 'clay pan' identified by EPA is not impervious." Plaintiff's Reply, 5. Van Buren's contention emanates from testing done in the summer of 1997, *after* the EPA rendered its decision. Van Buren effectively attempts to supplement the administrative record. The Court declines to allow Van Buren to do so. Van Buren has not filed a motion, requesting permission to supplement the record; nor

**2.** Moreover, Van Buren's argument that this purportedly "stale scientific evidence will invalidate the conclusions derived from" it does not withstand review. *See* Plaintiff's Brief, 15. The employee who characterized the data as old, also concluded that the report relying on the data was *too conservative* in its estimation of breakthrough times. In other words, the old data overestimated the risk posed by groundwater seepage. *See* A.R. at 9751–52 ("The breakthrough times are unreasonably fast so the importance of groundwater recharge through the till is exaggerated."). The employee opined that "the short breakthrough times reported in the NTH report are not consistent with long term considerations"

and feared that "an opponent [to the landfill] can easily make trouble" with this data. A.R. at 9752. The man's fears are realized.

**3.** 28 U.S.C. § 2601(c) reads:

**Intent of Congress**

It is the intent of Congress that the Administrator shall carry out this chapter in a reasonable and prudent manner, and that the Administrator shall consider the environmental, economic, and social impact of any action the Administrator takes or proposes to take under this chapter.

has Van Buren provided any authority supporting its request.[4] The Court does not, therefore, consider the evidence, or the argument advanced in reliance on it.

## IV. Conclusion

Because Van Buren has failed to demonstrate that the EPA's decision-making was arbitrary and capricious, Van Buren's motion for summary judgment is denied. EPA's motion for summary judgment and WDI's motion of summary judgment are granted.

SO ORDERED.

### JUDGMENT

The Court having reviewed and fully considered the pleadings filed by the parties and for the reasons set forth in an Order Granting Defendants' Motions for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment and filed herein;

IT IS HEREBY ORDERED AND ADJUDGED that Defendants' motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and this case is DISMISSED.

SO ORDERED.

---

4. Van Buren may have decided not to file a motion requesting permission to supplement, given the likely possibility that Van Buren's new evidence would not alter this Court's decision on the merits, because even if the court were to consider material outside the administrative record, the standard for reviewing the agency's decision does not change. *See United States v. Akzo Coatings,* 949 F.2d 1409, 1428 (6th Cir.1991) ("[T]he reviewing court must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.").